UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDOLF CHEREWICK,<br><br>                              Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY,<br>an Illinois Corporation; and, DOES 1-50,<br><br>                              Defendants. | Case No.: 3:20-cv-00693-BEN-MSB<br><br>**ORDER DENYING MOTION TO DISMISS** |

Before the Court is the motion to dismiss Plaintiff's Complaint filed by Defendant State Farm Fire and Casualty Company ("State Farm"). (Doc. No. 2-1.) For the reasons that follow, the motion is **DENIED**.

I.     **BACKGROUND**[1]

Plaintiff Randolph Cherewick is a resident of San Diego, California, and owner of a 2008, 27' Boston Whaler boat ("vessel"). In July 2015, Plaintiff delivered the vessel to Oceanside Marine Center ("OMC") for the inspection and repair of three Honda outboard engines. Other than the engines, the vessel was in good condition. Plaintiff selected

---

[1] The following overview of the facts are drawn from Plaintiff's Complaint, which the Court assumes true in analyzing Defendant's motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court is not making factual findings.

1

OMC to repair the vessel because OMC was well known in the City of Oceanside and was recommended to the Plaintiff by a reputable yacht broker. Plaintiff prepaid OMC over $17,000.00 for any parts or materials prior to work commencing.

On November 18, 2015, OMC's employee and General Manager, Butch Hainsworth represented to the Plaintiff that while conducting a sea trial of the vessel, OMC had "bumped" into a dock, causing minor damage to the vessel, which OMC would repair at its own cost. At the time of the collision, Plaintiff had no basis upon which to doubt the veracity of OMC's representations.

In February 2016, while in the care of OMC and while under the command and operation of Hainsworth, the vessel suffered significant damages.

In March 2016, Hainsworth contacted Plaintiff's representative to set up a meeting at OMC to demonstrate that the Kolher generator, which OMC claimed to have rebuilt, was operating properly. At the meeting, OMC's mechanic was unable to get the generator to start. Plaintiff's assistant who appeared at the meeting believed the generator was either installed backwards or improperly. In June 2016, at the direction of OMC, Plaintiff had the vessel removed from OMC and placed in dry storage.

Due to Plaintiff's other pursuits (traveling overseas, traveling regularly to a second home in Seattle, and overseeing new home construction in San Diego) the vessel remained in dry storage and was not inspected by the Plaintiff until September of 2018.

In September 2018, while having the vessel cleaned and washed, the Plaintiff discovered – for the first time – a swath of mismatched color paint on the upper part of the forward bow of the vessel's hull and poorly fitted fiberglass stamping deck repairs just above the forward bow of the vessels hull. OMC had used paint and fiberglass to cover damage caused to the vessel by OMC. Plaintiff further discovered – for the first time – substantial spider-cracking of the vessel's hull and damage to the heavy-duty rubber side board strakes. The vessel, at the time it was delivered to OMC, had not been in an accident or suffered similar damage since its initial purchase as new.

On October 6, 2018, the Plaintiff tendered a claim to State Farm for the damage to the vessel. On October 7, 2018, the Plaintiff provided State Farm with a summary of the known history leading up to the claim which stated that the vessel had "suffered significant and possibly irreparable damage while being operated by the Oceanside Marine Center."

On October 9, 2018, Plaintiff spoke with State Farm's Claim Specialist, Andrea Wills regarding the discovery of the loss. Later that day, Wills, on behalf of State Farm, denied Plaintiff's claim pursuant to the policy's exclusions.

On November 28, 2018, Plaintiff requested State Farm reconsider his claim. State Farm did so and conducted an inspection of the vessel through Todd & Associates Inc.

On February 20, 2019, State Farm again denied coverage claiming in part that "there has not been a cost incurred by Mr. Cherewick for the initial impact damages caused by Oceanside Marine Center, the repairs were completed . . . there is no structural damage to the hull that weakened it or made it structurally unsafe. The issues found are cosmetic from the gelcoat repair and colors not matching well."

On November 25, 2019, Plaintiff filed a complaint in the San Diego Superior Court alleging breach of contract and breach of the implied covenant of good faith and fair dealing and seeking punitive damages. (Doc. No. 1-2.) On April 10, 2020, Plaintiff's action was removed to this Court. (Doc. No. 1.) On April 15, 2020, Defendant filed a Motion to Dismiss Plaintiff's Complaint in its entirety and without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 2.) On May 22, 2020, Plaintiff filed an Opposition to Defendant's 12(b)(6) motion. (Doc. No. 3.) On May 29, 2020, the Defendant filed a Reply to Plaintiff's Opposition and now seeks dismissal of the claims asserted against it in the Complaint. (Doc. No. 4.)

Attached to Plaintiff's Complaint are multiple exhibits. Exhibit 13 a. includes an email, dated February 23, 2016, from Sean Keating to Plaintiff and Hainsworth regarding a status report of the vessel. The email states in part:

"Damage: my understanding is that the boat hit the cement piling in front of your pier and caused fairly significant damage. The colors don't quite match, but close enough. For safety's sake, we need a report on what happened and what work was performed by Jorge (how many hours)."

Under exhibit 13 a. there is another email, dated March 16, 2016, addressed to Hainsworth from the Plaintiff, regarding his visit to the vessel on March 16, 2016. The email states in part: "Daniel showed me the repair work and the damage at the bow of my boat (12" wide by 3" deep approximately, located in the deck of the light colored fiberglass), with a slightly raised repair surface. No other damage area was shown to me."

The events related in the emails are not specifically mentioned in the allegations of the Complaint. For purposes of a 12(b)(6) motion, looking at the facts in the light most favorable to the nonmoving party, the Court considers but does not rely on these exhibits.

## II.   THE INSURANCE POLICY

On December 31, 2015, State Farm issued a Boatowners Policy (policy no. 47-BJ-R419-1) to Plaintiff insuring the vessel. State Farm insured the vessel during all relevant times in 2015 and 2016.[2]

---

[2] The salient parts of the insurance policy are set out here:
"SECTION I—LOSSES INSURED
 We insure for accidental direct physical loss to the property . . . except as provided in SECTION I—LOSSES NOT INSURED. . . .
SECTION I—LOSSES NOT INSURED
1. We do not insure for loss to the property . . . consisting of, or directly and immediately caused by . . .
a. wear, tear, marring, scratching, denting, deterioration . . . mechanical breakdown . . .
i. infidelity of any person to whom the insured property is entrusted or rented.
j. repairing, renovating, servicing, or maintenance . . . .
2. We do not insure under any coverage for any loss which would not have occurred in the absence of . . .

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Furthermore, courts may consider material properly submitted as part of the complaint. *Hal Roach Studios, Inc. v. Richard Feiner and Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).

---

b. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of loss, or when property is endangered.
3. We do not insure under any coverage for . . .
a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;
b. defect, weakness, inadequacy, fault or unsoundness in: [¶] (1) design, specifications, workmanship, construction; [¶] (2) materials used in construction or repair; or [¶] (3) maintenance . . . of any property. However, we do insure for any resulting loss from items a. and b. unless the resulting loss is itself a Loss Not Insured by this Section . . . .
6. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage."

## IV. DISCUSSION

Plaintiff's Complaint asserts two state law claims against Defendant for breach of contract and breach of good faith and fair dealing. Plaintiff also seeks punitive damages. Defendant's motion argues that Plaintiff has failed to state a claim on two primary grounds:[3] (1) Plaintiff's Complaint is time-barred by the one-year suit limitation provision in the insurance policy; and (2) all potential for coverage for Plaintiff's claim is precluded by the policy's exclusions. Furthermore, Defendant argues that since it owed no benefits to the Plaintiff under the policy, Defendant did not act unreasonably by withholding such benefits. As will be explained in further detail below, the Court finds the allegations in Plaintiff's complaint sufficient to withstand a motion to dismiss.

### A. BREACH OF CONTRACT (CLAIM ONE)

To state a claim for breach of contract under California law, the plaintiff must allege the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Cal. Ct. App. 2008), *as modified on denial of reh'g* (Feb. 5, 2008.); *Keen v. Am. Home Mortgage Servicing, Inc.,* 664 F.Supp.2d 1086, 1099 (E.D. Cal. 2009). Defendant does not contest element: (1) the existence of a contract; (2) Plaintiff's performance or excuse for nonperformance; or (4) that Plaintiff suffered damages. Defendant argues that Plaintiff's claim for breach of contract fails because the Complaint is time-barred by the policy's one-year suit limitation or alternatively, the alleged loss is entirely precluded by the policy's exclusions.

---

[3] The Court's analysis of the Defendant's primary arguments does not mean the Court has not considered all of the grounds for dismissal. The Court has reviewed and considered all of the arguments contained therein, even though it may not expressly discuss each argument.

### 1. *Delayed Discovery and Inception of the Loss*

"Under California law, [pursuant to Insurance Code Section 2070,] all fire insurance policies must be on a standard form and, except for specified exceptions, may not contain additions thereto." *Prudential-LMI Com. Ins. v. Superior Court*, 798 P.2d 1230, 1235 (Cal. 1990), *as modified* (Dec. 13, 1990). "This standard form provides that no suit or action for recovery of any claim shall be sustainable unless commenced within 12 months after the 'inception of the loss.'" *Id*. (Citations omitted.) "Inception of the loss" has been defined as "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty [i.e., the duty to notify the insurer of a covered loss] under the policy has been triggered." *Prudential*-LMI, 798 P.2d at 1232. "Determining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact." *Id*. at 1238.

In order to take advantage of the delayed discovery rule, equitably tolling an insurance policy's suit limitation period, "the insured is required to be diligent in the face of discovered facts." *Id*. "The more substantial or unusual the nature of the damage discovered by the insured (e.g., the greater its deviation from what a reasonable person would consider normal wear and tear), the greater the insured's duty to notify his insurer of the loss promptly and diligently. *Id*. (citing *April Enterprises, Inc. v. KTTV*, 195 Cal. Rptr. 421, 437 (Cal. Ct. App. 1983) (finding it is generally a question of fact whether reasonable diligence has been exercised in discovering a claim)).

Defendant primarily complains Plaintiff's Complaint lacks a cognizable legal theory because the claims are time barred by the one-year suit limitation provision in the State Farm Policy. Mot. at p. 2. Specifically, Defendant argues that Plaintiff cannot apply the delayed discovery rule because Plaintiff was on notice of the loss either November 18, 2015 when he was informed the vessel was involved in a collision, or

February 23, 2016,[4] when Plaintiff's representative emailed Plaintiff and Hainsworth about a collision. *Id.* at p. 9. The Court disagrees.

Here, the Complaint alleges that on November 18, 2015, OMC's employee, Hainsworth, represented to Plaintiff that the vessel had "bumped into a dock" while conducting a sea trial, causing only "minor damage" which OMC "would repair at its own cost." Compl. ¶ 14. The message described in the Complaint does not describe appreciable damage which would place Plaintiff on notice of a covered loss. The Defendant refers to exhibits attached to the Complaint, rather than specific allegations in the Complaint to support the contention that Plaintiff was on notice of appreciable damage on February 23, 2016. However, as noted in *Prudential-LMI*, "[d]etermining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact." *Prudential-LMI*, 798 P.2d at 1238. Accordingly, considering all facts in the light most favorable to the plaintiff, the Court finds factual allegations in the Complaint plausibly allege the Plaintiff was not on notice of appreciable damage prior to September 2018.

The Defendant also relies on *Abari v. State Farm Fire & Casualty Co.*, 252 Cal. Rptr. 565, 567 (Cal. Ct. App. 1988) in support of its contention that the delayed discovery rule is inapplicable because Plaintiff was on the vessel for a sea trial on March 16, 2016 and did not inquire further into the damage resulting from the collision, thus failing to be diligent.[5] Mot. at p. 9. In *Abari*, an absentee landlord sued his property insurer for coverage five years after discovering cracks in the walls, driveway, counter, and fireplace of a house he owned. *Abari*, 252 Cal. Rptr. at 566. *Abari* filed a complaint for breach of contract and bad faith. *Id.* at 565. The insurer demurred contending that the action was

---

[4] The email on February 23, 2016, and the events referred to therein are not alleged in the Complaint but are only attached to the state complaint as an exhibit.

[5] Defendant refers to an event referenced in exhibit 13. a. which is not mentioned in the allegations of the Complaint.

barred by the one-year suit provision, arguing that the insured's status as an absentee landlord until 1984 should not toll accrual. *Id*. The *Abari* court ruled in favor of the insurer emphasizing that in first party property loss cases, it is the occurrence of some cognizable event rather than knowledge of its legal significance that triggers the insured's notice duties under the policy. *Id*. at 567. However, the court believed that the insured reasonably could have found the cracks so trivial that he would not have been alerted to the gravity of the damage. *Id*. Nonetheless, the insured's complaint lacked any allegation showing his delayed notice was reasonable; instead the insured "merely pled he discovered the cracks in 1979; the cracks worsened over time; and upon reentering the property in 1984, he observed further damage." *Id.* Accordingly, the plaintiff in *Abari* failed to state facts alleging his delayed discovery was reasonable in order to toll the commencement of the policy's one-year suit provision.

Here, the Complaint alleges Plaintiff did not discover a claimable loss until September 2018, and that such delayed discovery was reasonable due to OMC's concealment of material information. Compl. ¶¶ 17-18. The Complaint alleges that on November 18, 2015, Hainsworth told Plaintiff that the vessel had "bumped into a dock" causing "minor damage" which OMC "would repair at its own cost." *Id*. ¶ 14. OMC is further alleged to have "concealed material information" about the damage by "attempt[ing] to 'cover it up' with fiberglass and paint" so Plaintiff would not discover the damage. *Id*. ¶ 18. As a result, the Complaint alleges Plaintiff did not discover the "facts constituting the damage" resulting in "coverage under the policy" until September 2018. *Id*. ¶ 5. Unlike in *Abari*, where the complaint failed to allege reasons why the insured was not alerted to the gravity of the damage, here, the Complaint alleges, in addition to OMC's concealment, Plaintiff was "justified" in relying on OMCs misrepresentations because OMC was "well-known in the city" and "recommended" to Plaintiff by a "reputable yacht broker." *Id*. ¶ 18. Furthermore, the Complaint alleges a degree of diligence on behalf of Plaintiff, in that Plaintiff inspected the vessel in 2018 and was unable to do so sooner. *Id*. ¶ 17. Whether Plaintiff exercised reasonable diligence is

thus a question of fact. *See April Enterprises,* 195 Cal. Rptr. at 437. The Court finds that Plaintiff has plausibly alleged his delayed discovery was reasonable for purposes of withstanding a motion to dismiss.

### 2. *Policy Exclusions and Covered Loss*

Next, Defendant contends the Complaint fails to state a claim because all loss alleged is "precluded from coverage by [the policy's] numerous exclusions." Mot at p. 2. Defendant relies on *Brodkin,v. State Farm Fire & Casualty Co.*, 265 Cal. Rptr. 710, 713 (Cal. Ct. App. 1989), which held that "summary judgment is still proper if all of the alleged causes of the loss are excluded under the policy." This Court finds *Brodkin* inapplicable to the present case because not all of Plaintiff's alleged loss is excluded under the policy, and questions of fact remain.

Under California law "*[i]nsurance coverage is interpreted broadly so as to* afford the greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly against the insurer." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2008) (quoting *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003), *as modified on denial of reh'g* (Sept. 17, 2003.)) In order to exclude coverage, an "exclusionary clause must be *conspicuous, plain and clear.*" *MacKinnon*, 73 P.3d at 1213 (internal quotation marks and citation omitted). "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." While "[c]lear, explicit, and unambiguous contractual language governs" if an ambiguity does arise, the court must interpret contractual terms to "protect the objectively reasonable expectations of the insured." *Manzarek*, 519 F.3d at 1032. (quoting *Boghos v. Certain Underwriters at Lloyd's of London*, 115 P.3d 68, 71 (Cal. 2005)).

First, Defendant argues application of Exclusion 1. j., which excludes recovery for "loss consisting of" or "directly and immediately caused by" "servicing," precludes coverage for the vessel from hitting the cement piling. Mot. at pp. 11-12. The Defendant offers no authority for this exclusion but argues that the damage occurred while the vessel

was being serviced by OMC.  *Id*.  The Complaint alleges "[t]he vessel was damaged by the negligent operation of the vessel while in the Pacific Ocean" resulting in a covered loss pursuant to the policy's coverage of accidental direct physical loss.  Compl. ¶ 32.  Importantly, the Complaint further alleges the "damage to the Vessel did *not* occur while the Vessel was being repaired, renovated, serviced or while maintenance was being performed" as "[a]ll of those activities are performed *out-of-the-water*."  *Id*. ¶ 31.  (emphasis in original).  The Complaint sufficiently alleges the damage to the vessel was not a direct and immediate result of servicing, thus this exclusion does not bar loss caused by the collision assuming the facts as alleged are true.

        Second, Defendant argues application of Exclusion 1.i., "which precludes loss caused by infidelity of any person to whom the insured entrusted property." Mot. at p. 12.  Defendant argues that it excludes any loss to the Plaintiff's vessel "caused by the dishonest acts of OMC."  *Id*.  Defendant relies on *Atlas Assurance Co. v. McCombs Corp.*, 194 Cal. Rptr. 66, 69 (Cal. Ct. App. 1983), in which the court found the policy's Infidelity Exclusion precluded coverage for liability arising from the theft committed by the insured's employee.  This Court finds this exclusion inapplicable to the present case since Plaintiff alleges the loss to the vessel primarily resulted from hitting a cement piling during a sea trial; the alleged misrepresentations made by OMC did not cause the damage but rather obstructed Plaintiff's ability to discover the damage.

        Third, Defendant argues the loss sustained due to OMC's improper repairs is excluded by Exclusion 3.a. which "precludes coverage for loss caused by . . . failure to act . . of any person or government body whether intentional, wrongful, negligent or without fault." Mot. at p. 12.  Defendant relies on *Waldsmith v. State Farm Fire & Casualty* Co., 283 Cal. Rptr. 607, 608 (Cal. Ct. App. 1991), which applied a similar exclusion, and precluded coverage for damage caused by a city's failure to maintain a water main which, in turn, resulted in a landslide and property loss to an insured.

        Here, the Complaint alleges the vessel "suffered significant and possible irreparable damage" believed to have occurred during a "sea-trial attempt" while being

operated by the General Manager of OMC. Compl. ¶ 22. Considering the factual allegations in the light most favorable to the nonmoving party and drawing on all reasonable inferences, this Court finds the allegations that much of the loss to the Plaintiff's vessel occurred during the sea trial when it struck a cement piling are plausible. Thus, assuming the allegations are true, Plaintiff's claim is not barred in its entirety due to loss from improper repairs. *Manzarek,* 519 F.3d at 1031.

Fourth, Defendant argues that Plaintiff's loss is further excluded under Exclusion 3.b.(1), precluding coverage for direct physical loss caused by a contractor's negligent work. Mot. at p. 12. According to Defendant (and relying on *Wilson v. Farmers Insurance Exchange,* 126 Cal. Rptr. 2d 305, 309 (Cal. Ct. App. 2002)), this exclusion is "designed to prevent expansion of coverage to ensure the quality of a contractual performance undertaken by . . . someone authorized by the insured." Mot. at p. 12. Like the previous exclusion, this Court finds that factual allegations in the Complaint support the plausible conclusion that Plaintiff's claim is predicated on a direct accidental physical loss which occurred during a sea trial. As before, assuming the allegations are true, direct physical loss from the contractor's negligent work will not bar the Plaintiff's claim in its entirety.

Fifth, Defendant argues Plaintiff's loss is excluded under Exclusion 1.a, precluding coverage for "wear, tear, deterioration, and mechanical breakdown" of the vessel caused by "sitting unattended for 2 and ½ years." Mot. at p. 13. As discussed above, this Court finds that the Complaint sufficiently alleges much of the loss occurred while being negligently operated during a sea trial attempt. Thus, loss due to wear and tear from sitting in storage will not bar Plaintiff's claim in its entirety.

Finally, Defendant argues Plaintiff's loss is excluded under the policy's Neglect Exclusion, contending that Plaintiff was neglectful by "failing to take steps to repair the vessel after being informed of the collision," or "to take steps to repair the vessel after determining the repairs made by OMC were faulty." Mot. at p. 13. To apply the neglect exclusion, defined as "neglect of insured to use all reasonable means to save and preserve

property at and after time of loss or when property is endangered by peril insured against," the insured must have knowledge of a "readily identifiable, imminent, and real peril, endangering the property." *Tuchman v. Aetna Cas. & Sur. Co.*, 52 Cal. Rptr. 2d 274, 279 (Cal. 1996).

Here, the Complaint alleges facts plausibly showing Plaintiff did not discover damage to the vessel until September 2018 due to OMC's concealment and/or misrepresentations. Assuming the facts are true, Plaintiff would not have knowledge of a readily identifiable, imminent, and real peril, endangering the vessel, as is required for this exclusion. Accordingly, at this stage of the litigation, the neglect exclusion does not bar Plaintiff's claim in its entirety.

The Court finds that the Complaint plausibly alleges "more than a sheer possibility" that Defendant has breached the insurance contract. *Ashcroft*, 556 U.S. at, 678. Furthermore, the exclusions listed in the policy do not preclude coverage of the alleged loss, in view of the facts plausibly alleged in the Complaint. *Brodkin*, 265 Cal. Rptr. at 713. For the forgoing reasons, this Court denies Defendant's motion to dismiss Plaintiff's claim for breach of contract.

### B.  BREACH OF GOOD FAITH AND FAIR DEALING (CLAIM TWO)

Defendant also moves to dismiss Plaintiff's claim for breach of good faith and fair dealing. Defendant argues three grounds: 1) the claim is time barred with the breach of contract claim since it is "on the policy;" 2) the claim fails as a matter of law because no benefits were owed pursuant to the policy's exclusions;[6] or 3) the withholding of benefits by the defendant was not unreasonable.[7] As discussed above, this Court finds the claims

---

[6] "[A] bad faith claim cannot be maintained unless policy benefits are due." *Love v. Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1153 (Cal. Ct. App. 1990).

[7] The key to a bad faith claim is determining whether or not the insurer's denial of coverage was "reasonable." *Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152, 1161 (9th Cir. 2002) (quoting *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001)). "[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of

are not time-barred at this stage nor is Plaintiff's alleged loss entirely precluded by the policy's exclusions. As explained below, this Court finds the Complaint sufficiently alleges breach of good faith and fair dealing.

To state a claim "for breach of the implied covenant of good faith and fair dealing in the denial of coverage context, the plaintiff must show that: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Align Tech., Inc. v. Fed. Ins. Co.,* 673 F.Supp.2d 957, 965 (N.D. Cal. 2009) (quoting *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 255 (Cal. Ct. App. 1990)) (internal quotations omitted); *see also R & R Sails, Inc. v. Ins. Co. of State of Pennsylvania,* 610 F.Supp.2d 1222, 1230 (S.D. Cal. 2009). That is, "Plaintiff must establish that Defendant's actions both breached the *contract and* the actions, taken in bad faith, frustrated the actual benefits of the contract." *Martinez v. Infinity Ins. Co.,* 714 F.Supp.2d 1057, 1063 (C.D. Cal. 2010) (emphasis in original). "In first party insurance cases, the implied covenant of good faith and fair dealing is breached only if the denial or delay in provision of benefits is unreasonable." *Id.* (citing *Wilson v. 21st Century Ins. Co.,* 171 P.3d 1082 (Cal. 2007)). "[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 1038 (Cal. 1973). Furthermore, "an insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." *In re C.M. Meiers Co., Inc.*, 527 B.R. 388, 409 (Bankr. C.D. Cal. 2015) (citing *Egan v. Mut. of Omaha Ins. Co.,* 620 P.2d 141, 143 (Cal. 1979)).

Defendant argues that the Complaint fails to allege a sufficient factual basis showing Defendant's denial of policy benefits was unreasonable. Mot. at pp. 13-14.

---

fact." *Chateau Chamberay Homeowners Ass'n v. Associated Intern.,* 108 Cal.Rptr.2d 776 (Cal. Ct. App. 2001); *accord Dalrymple v. United Servs. Auto. Ass'n,* 40 Cal.App.4th 497, 511, 46 Cal.Rptr.2d 845 (1995).

Specifically, Defendant argues that Plaintiff has failed to allege "more egregious misconduct than an incorrect denial of policy benefits." *Id*. at p. 14. The Court finds this argument without merit.

Here,[8] the Complaint alleges unreasonable delay by the Defendant in providing benefits for a covered loss, owed under the policy. Compl. ¶¶ 25-27. The Complaint alleges Defendant unreasonably withheld policy benefits pursuant to Defendant's failure to conduct a "thorough, fair and objective investigation" pursuant to section 2695.7(d) of the California Fair Claims Settlement Practices Regulations. *Id.* ¶ 57(a). The Complaint alleges that Todd & Associates, Inc., who are "frequently used by Defendant to assist in [the] wrongful denial of claims," "did not conduct a sufficient investigation to come to the conclusion reached in its report." *Id*. ¶ 44. The Complaint further alleges that if Defendant had conducted an adequate inspection, Defendant would have discovered that "covered damage exists" and "the vessel likely cannot even be repaired to be seaworthy." *Id*. ¶ 45. Accordingly, Plaintiff has sufficiently alleged unreasonableness to withstand a motion to dismiss.

Next, Defendant complains that its withholding of benefits under the policy was not unreasonable pursuant to the "genuine dispute" doctrine[9] and thus the bad faith claim fails as a matter of law. Mot. at p. 14. However, the Court need not address this issue at

---

[8] As set forth above, Plaintiff states a claim for breach of contract, and therefore also sufficiently alleges the first element of a claim for the breach of implied covenant of good faith and fair dealing.

[9] An insurer may obtain summary adjudication of a bad faith cause of action "by establishing that its denial of coverage, even if ultimately erroneous and a breach of contract, was due to a genuine dispute with its insured." *Bosetti v. United States Life Ins. Co. in City of New York*, 96 Cal. Rptr. 3d 744, 770 (Cal. Ct. App. 2009). "[A]n insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." *Amadeo v. Principal Mut. Life Ins. Co.* 290 F.3d 1152, 1161–62 (9th Cir. 2002).

this time since the "genuine dispute" doctrine requires evidence outside of the Complaint. S*ee Paslay v. State Farm Gen. Ins. Co.*, 203 Cal. Rptr. 3d 785, 796 (Cal. Ct. App. 2016).

In sum, the Court finds that the Complaint sufficiently alleges the elements of a breach of the duty of good faith and fair dealing, and therefore denies Defendant's motion to dismiss this claim.

### C.  PUNITIVE DAMAGES

Cal. Civ.Code § 3294 permits the recovery of punitive damages if the defendant is guilty of "oppression, fraud or malice." Under the federal pleading standards, a plaintiff may rely on conclusory averments of malice or fraudulent intent to plead the mental state required by § 3294. *Clark v. Allstate Ins. Co.,* 106 F.Supp.2d 1016, 1019 (S.D. Cal. 2000) (collecting cases). The *Clark* court found sufficient a plaintiff's allegation that "Allstate intentionally denied Plaintiff's insurance claim despite knowledge of its coverage obligations, and that it acted with an intent to injure Plaintiff." *Id.* at 1020.

Here, Plaintiff has made the same allegations as the Plaintiff in *Clark*. Compl. ¶¶ 57(c), 61-62. Thus, allegations in the Complaint are sufficient to support a prayer for punitive damages. *J & J Holdings, Inc. v. Great Am. E & S Ins. Co.*, No. CV 18-2487-DMG (EX), 2018 WL 8333420, at *4 (C.D. Cal. Oct. 24, 2018); *Align Tech., Inc. v. Fed. Ins. Co.*, 673 F. Supp. 2d 957, 965–66 (N.D. Cal. 2009).

In sum, the Court finds the Complaint plausibly alleges "more than a sheer possibility" that the Defendant has acted unlawfully, and therefore denies Defendant's motion to dismiss.

### V.  CONCLUSION

For all of the foregoing reasons, State Farm's motion to dismiss Plaintiff's Complaint is **DENIED**.

DATED: July 14, 2020

_____
HON. ROGER T. BENITEZ
United States District Judge